J-A02029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORENZO HARRIS | : | |
| | : | |
| Appellant | : | No. 736 WDA 2020 |

Appeal from the PCRA Order Entered July 14, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0009422-1998

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                **FILED: FEBRUARY 9, 2022**

Lorenzo Harris (Appellant) appeals *pro se* from the order denying, after a hearing, his fourth petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

This case is before us following remand.  In a prior decision, we recounted the procedural history at length as follows:

> On February 16, 2000, a jury convicted Appellant of rape, 18 Pa.C.S.A. § 3121; terroristic threats, 18 Pa.C.S.A. § 2706; unlawful restraint, 18 Pa.C.S.A. § 2902; and possessing an instrument of crime, 18 Pa.C.S.A. § 907.  The trial court also convicted Appellant of persons not to possess a firearm, 18 Pa.C.S.A. § 6105.  Appellant's convictions stemmed from his sexual assault of a female guest at his residence in Pittsburgh on May 4, 1998.  The victim testified at trial that Appellant, whom she had met one time before this incident, pointed a gun at her and forced her to engage in sexual intercourse with him.  The Commonwealth also presented the testimony of Walter Lorenz, a

_____

[*] Retired Senior Judge assigned to the Superior Court.

criminalist for the Allegheny County Coroner's Office. Lorenz testified that he compared semen samples taken from the victim's clothing to DNA from a blood sample provided by Appellant. Lorenz opined "that the DNA profile found in [the semen] stains matches the DNA profile of [Appellant] and that because of that, he cannot be excluded as a potential donor of that DNA." Lorenz further explained:

> [Lorenz:] [I]n this case we found a match of DNA between [Appellant] and the sperm fractions of the stains. This means that either it could be from [Appellant] or it could be from an individual with the same DNA profile. We cannot exclude that particular possibility.
>
> Now, I can give you about how many people might be expected to have that same kind of DNA profile from our analysis of the populations and from what we've seen in Allegheny County.
>
> ...
>
> In Caucasians in the white population, you would expect to see that DNA profile in one in about three million individuals; and in the African-American population, you would expect to see this in about 1 in 1,690 individuals. It's [a] relatively common DNA profile.
>
> [The Commonwealth:] However, [Appellant] cannot be excluded in the DNA analysis of his DNA?
>
> [Lorenz:] That is correct.

Based on this evidence, the jury and the court convicted Appellant of the above-stated crimes. On August 7, 2000, the court sentenced Appellant to 18½ to 37 years' imprisonment. This Court affirmed his judgment of sentence on February 17, 2004. Appellant did not appeal to our Supreme Court.

[Between March 2004 and December 2007, Appellant filed three unsuccessful PCRA petitions.]

On September 13, 2016, Appellant filed the *pro se* PCRA petition underlying the present appeal. Therein, he alleged that in August of 2016, he had blood work done, which revealed he has sickle cell disease. Appellant claimed that this new fact of his disease demonstrates that it was not his DNA on the victim's clothing. He further alleged that the Commonwealth's DNA expert, Walter Lorenz, must have known about Appellant's disease and that the Commonwealth committed a [violation of **Brady v. Maryland**, 373 U.S. 83 (1963)] by withholding this evidence from Appellant.

On March 8, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss that petition, stating (without any elaboration) that it "lacks jurisdiction in regard to the above-captioned case[ ]." Rule 907 Notice, 3/8/17 (single page). Appellant did not respond. On April 27, 2017, the PCRA court issued an order denying Appellant's petition without any explanation of the basis for that decision. The order informed Appellant that he had 30 days to file a notice of appeal. Because 30 days from April 27, 2017, was Saturday, May 27, 2017, and Memorial Day was Monday, May 29, 2017, Appellant's notice of appeal was due on Tuesday, May 30, 2017. **See** 1 Pa.C.S.A. § 1908; **see also** Pa.R.A.P. 903(a) (stating that a notice of appeal must be filed within thirty days after the order appealed from is entered). Appellant's notice of appeal was time-stamped and docketed on June 1, 2017.

On June 6, 2017, the PCRA court issued an order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal by June 30, 2017. Appellant's Rule 1925(b) statement was time-stamped and docketed on July 10, 2017. On November 21, 2017, the PCRA court issued a Rule 1925(a) opinion concluding that Appellant's notice of appeal was untimely and his appeal should be quashed. The PCRA court offered no discussion as to why it denied Appellant's petition.

\* \* \*

We agree with Appellant that he has satisfied the newly-discovered fact exception. Appellant asserted in his petition that he had blood tests done on August 8, 2016, which first revealed that he suffers from sickle cell disease. On September 13, 2016, he filed the present, *pro se* petition premised on his discovery of this new fact. Therein, Appellant averred that he acted with due diligence in raising this claim as soon as he received this diagnosis,

- 3 -

which arose from blood tests conducted after he exhibited physical symptoms of muscle weakness, dizziness, and headaches. On appeal, Appellant adds that he asked his trial counsel to seek further testing of his blood sample, but counsel did not comply with that request. In light of this record, we conclude that Appellant has demonstrated that he exercised due diligence in discovering a new fact that was previously unknown to him.

Therefore, we vacate the PCRA court's order denying Appellant's petition as untimely. We remand for the court to appoint Appellant counsel, and to conduct a hearing on the merits of his after-discovered evidence claim, as well as his related allegation that the Commonwealth committed a **Brady** violation. At that proceeding, Appellant must present evidence regarding why the presence of his sickle cell disease affected (or may have affected) the DNA results that were admitted at his trial.

**Commonwealth v. Harris**, 2019 WL 1308164, at **1-2, 4 (Pa. Super. Mar. 21, 2019) (footnotes and citations omitted) (Remand Decision).

Following remand, the PCRA court appointed counsel. The PCRA court conducted an evidentiary hearing on June 29, 2020. Appellant testified, as did his expert witness, Sara Bitner, the quality manager and DNA technical leader at the Allegheny County Office of the Medical Examiner's Laboratory (ME's Lab). On July 14, 2020, the PCRA court issued a one-page order denying relief. PCRA counsel filed a timely notice of appeal accompanied by a Rule 1925(b) statement.

On July 24, 2020, despite the pendency of this appeal and being represented by counsel, Appellant filed *pro se*, without leave of court, a purported amended PCRA petition. On August 4, 2020, Appellant filed a *pro se* request for post-conviction DNA testing pursuant to 42 Pa.C.S.A. § 9543.1.

On August 10, 2020, after this Court received numerous *pro se* filings from Appellant, we remanded for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). On January 13, 2021, the PCRA court granted Appellant's request to proceed *pro se* and the case was returned to the Superior Court.

On January 21, 2021, we remanded the case a second time for the PCRA court to issue a Rule 1925(a) opinion, which the PCRA court filed on February 18, 2021. However, rather than addressing the merits of the counseled petition it denied, the PCRA court discussed Appellant's *pro se* amended PCRA petition, which was a legal nullity. **See Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) (citation omitted) (courts "will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities."); **see also** Opinion, 2/18/21, at 2-6. In the interest of judicial economy, we examine Appellant's claims without the benefit of the PCRA court's reasoning as to its dismissal of the counseled petition.

Appellant raises the following questions for review:

1. Did the PCRA court err in denying [Appellant] Post Conviction Relief upon reviewing the expert's testimony that [Appellant] was born with a genetic disease known as Sickle Cell Disease. And if tested in a DNA test would be able to (EXONERATE) [Appellant]. In The Superior Court's MEMORANDUM, Order On remand, the Chief Justice directed the appellant to present evidence that his Sickle Cell Disease would have effective [*sic*] the DNA, presented at Trial by the Commonwealth. Pursuant to 42 Pa.C.S. § 9545(b)(1)(ii)? Granted by the Superior Court which gives the appellant a Constitution Due process right under 42 Pa.C.S. §

- 5 -

9543.1 which allows a petitioner to seek DNA testing for exoneration purpose?

2. Did the PCRA Court err in not granting Post Conviction Relief, Based upon Expert Witness's Testimony, stating that if tested in a DNA test, could EXONERATE [Appellant]. Such Sixth Amendment right rest with the original fact finder's [*sic*]. Let the record reflect that [Appellant] was tried in a Jury Trial.

3. Is [Appellant] eligible for relief under 42 Pa.C.S. 9543(a)(2)(vi) because of the unavailability at the time of trial of exculpatory DNA, evidence that shows [Appellant] does have Sickle Cell Disease genetically in his blood since birth if had been presented to the Jury, there would have been a reasonable probability of a different result?

4. Is [Appellant] eligible for relief under 42 Pa.C.S. § 9543(a)(2)(i). Because the Commonwealth withheld exculpatory evidence, lab test showing the blood type of the appellant, and the actual test that shows the comparison to the DNA, presented at trial against the appellant. Such evidence could have been explained better after a *Frye* [*v. United States*, 293 F. 1013 (D.C. Cir. 1923)] Test that would show that the Commonwealth is in violation of *Brady* and *Giglio* [*v. U.S.*, 405 U.S. 150 (1972)].

Appellant's Brief at 5-B-5 (issues reordered for disposition).

In reviewing an order denying a PCRA petition, we determine whether the order is supported by the evidence and free of legal error. *Commonwealth v. Kretchmar*, 971 A.2d 1249, 1251 (Pa. Super. 2009). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Treadwell*, 911 A.2d 987, 989 (Pa. Super. 2006). Moreover, "[t]his court has determined that in reviewing claims for relief in a second or subsequent collateral attack on a conviction and judgment of sentence, the request will not be entertained unless a strong *prima facie* showing is demonstrated that [ ] a miscarriage of

justice occurred." ***Commonwealth v. Fahy***, 737 A.2d 214, 223 (Pa. 1999) (citing ***Commonwealth v. Lawson***, 549 A.2d 107 (Pa. 1988)). "An appellant makes such a *prima facie* case only if he demonstrates that either the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes charged." ***Id.*** (quoting ***Commonwealth v. Morales***, 701 A.2d 516, 520-21 (Pa. 1997)).

Initially, we note that Appellant's brief violates several Rules of Appellate Procedure. ***See Commonwealth v. Hakala***, 900 A.2d 404, 406 (Pa. Super. 2006) (finding waiver where appellant violated multiple Rules of Appellate Procedure). As reproduced above, Appellant presents four questions for review. ***See*** Appellant's Brief at 5-B-5. However, the 5-page argument section of his brief is not divided into "as many parts as there are questions"; does not have separate, distinctive headings for each question; is numbered in an inconsistent manner; cites state and federal cases with little or no explanation of their relevance; and is nearly devoid of citation to evidence of record. ***See*** Appellant's Brief at I-I-4 part-2; ***see also Commonwealth v. Johnson***, 889 A.2d 620, 623 (Pa. Super. 2005) ("[A] brief containing such defective argument that appellate review is precluded has the same result as filing no brief at all.") (citation omitted); ***Commonwealth v. Franklin***, 823

A.2d 906, 910 (Pa. Super. 2003) (same). Most significantly, Appellant fails to present a coherent legal argument.[1]

Despite the defects in Appellant's brief, we interpret his argument to be that the PCRA court erred in denying his motion for post-conviction DNA testing pursuant to 42 Pa.C.S.A. § 9543.1. **See** Appellant's Brief at I-I-2.

"Post-conviction DNA testing falls under the aegis of the PCRA, ... and thus, our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." **Commonwealth v. Conway**, 14 A.3d 101, 108 (Pa. Super. 2011) (citations omitted). "When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in [42 Pa.C.S.A. §] 9543.1."[2] **Commonwealth v. Williams**, 35 A.3d 44, 47 (Pa. Super. 2011) (citation omitted).

---

[1] Although we may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading. **Commonwealth v. Blakeney**, 108 A.3d 739, 766 (Pa. 2014). "When issues are not properly raised and developed in briefs . . . a Court will not consider the merits thereof." **Commonwealth v. Rivera**, 685 A.2d 1011, 1013 (Pa. Super. 1996).

[2] Section 9543.1 requires an applicant to explain how testing would produce exculpatory evidence to establish "the applicant's actual innocence of the offense for which the applicant was convicted[.]" 42 Pa.C.S.A. § 9543.1(6)(i).

Here, Appellant's PCRA petition did not contain a request for post-conviction DNA testing. *See* PCRA Petition, 9/13/16, at 1-15. Appellant does not dispute the omission; instead, he claims his counsel, "requested in a [*sic*] Oral Motion for an [*sic*] DNA test, based on the expert testimony of Ms. Sara Bitner, See — PCRA, Transcripts, page 26, and 27, of June 2[9], 2020." Appellant's Brief at I. The record does not support this claim. PCRA Hearing, 6/29/20, at 26-27. Rather, the record demonstrates Appellant *pro se* filed a motion for DNA testing while represented by counsel. Motion for Post-Conviction DNA Testing, 8/04/20, at 1-2. We reiterate that the filing of *pro se* pleadings while represented by counsel is prohibited. **See Commonwealth v. Staton**, 184 A.3d 949, 958 (Pa. 2018) (no defendant has a constitutional right to self-representation together with counseled representation "either at trial or on appeal"); **Commonwealth v. Ali**, 10 A.3d 282, 293 (Pa. 2010) (characterizing as a "legal nullity" a *pro se* Pa.R.A.P. 1925(b) statement filed by an appellant who was represented by counsel); **see also Commonwealth v. Jette**, 23 A.3d 1032, 1036 (Pa. 2011) (citing Pennsylvania's longstanding policy precluding hybrid representation). In this case, the PCRA court properly declined to rule on the motion because it was a legal nullity. Thus, the issue was never before the PCRA court and is waived. **See** Pa.R.A.P. 302(a).

Appellant's second and third issues are related. Appellant asserts the PCRA court erred in denying him a new trial based on his claim of after-

discovered evidence. Appellant asserts that Sara Bitner's testimony at the PCRA hearing constituted exculpatory evidence. Appellant's Brief at I. Appellant contends Ms. Bitner's testimony proved,

> [A]ppellant could be exonerated by DNA test with the fact he does have Sickle Cell Disease in his Blood which is a genetic disease which would show up in any Bodily fluids that comes out the [A]ppellant's Body such as [semen]."

Appellant's Brief at I-4. We disagree.

> Our Supreme Court has explained:
>
> The four-prong test for awarding a new trial because of after-discovered evidence is well settled. The evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. *See Commonwealth v. Pagan*, [ ] 950 A.2d 270, 292 ([Pa.] 2008) (citations omitted).

*Commonwealth v. Castro*, 93 A.3d 818, 821 n.7 (Pa. 2014). In determining "whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted, ... a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010). Also, "the proposed new evidence must be producible and admissible." *Castro*, 93 A.3d at 825. It is the petitioner's burden to prove by a preponderance of the evidence that he met each of the factors in order to warrant a new trial. *Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa. Super. 2007).

- 10 -

It is unclear that the evidence is "after-discovered." In our Remand Decision, we determined Appellant did not know he had sickle cell disease until 2016. Remand Decision, at *2. This conclusion was based on Appellant's averments in his PCRA petition and his 2016 medical records. However, at the hearing following remand, PCRA counsel introduced medical records from 1996 — five years prior to Appellant's trial — showing that Appellant had been diagnosed with sickle cell disease. N.T., 6/29/20, at 8-9. Appellant claimed to be unaware of the 1996 diagnosis. *Id.* at 5-8. Although we are bound by our prior determinations, *see Commonwealth v. Reed*, 971 A.2d 1216, 1220 n.2 (Pa. Super. 2009) (citation omitted), the evidence presented following remand calls into question our prior determination.

Nonetheless, assuming *arguendo* that Appellant could not have discovered evidence of his sickle cell disease prior to trial, with respect to the second and third prongs of the after-discovered evidence test, the sickle cell evidence is neither cumulative nor corroborative. Moreover, it would not be used solely for impeachment purposes.

Regarding the fourth and final prong, to show the evidence was likely to result in a different verdict, Appellant would have to demonstrate "the presence of sickle cell disease affected (or may have affected) the DNA results that were admitted at his trial." Remand Decision, at * 4. Appellant failed to do so.

Despite Appellant's claim to the contrary, the testimony of Sara Bitner, from the Allegheny County ME's Lab, was not exculpatory. Ms. Bitner never testified that new DNA testing would impact the prior results or exonerate Appellant. Ms. Bitner testified that the lab lacks the capacity to conduct sickle cell testing, and does not conduct disease testing as part of its DNA testing in criminal cases. N.T., 6/29/20, at 19. She stated, "all of the locations of the DNA that we focus on for identification are not tied to any disease state[.]" *Id.* Ms. Bitner also clarified that the semen sample "could not have been used" to diagnose sickle cell disease. *Id.* at 20. Further, Ms. Bitner testified that, while blood can be tested for sickle cell disease, sickle cell disease is "quite common," and testing for sickle cell disease would "not be useful for the purpose of identification where the statistics that we issue are in the original quintillion, tens of thousands, and now as high as undecillion. It's a much higher degree of discrimination that we provide with the testing that we perform." *Id.* at 19.

Thereafter, the PCRA court concluded, "even though [the lab] didn't test for [sickle cell disease], it didn't make a bit of difference. It's not going to change the DNA results." N.T., 6/29/20, at 27. Upon review, we agree. Thus, Appellant has not shown that the absence of sickle cell testing impacted the DNA results admitted at trial, and ultimately, the verdict. *Pagan*, 950 A.2d at 292.

Moreover, the evidence included identification by the victim, who had met Appellant previously, and the recovery from Appellant's residence of a firearm, which the victim identified as resembling the firearm used in the assault. *See Commonwealth v. Harris*, 2098 WDA 2001, at 1-3 (Pa. Super. Feb. 17, 2004) (unpublished memorandum). Accordingly, no relief is due.

In his fourth issue, Appellant states:

> The Commonwealth support's [*sic*] the charges after the fact that they are content from supporting a DNA test, by not addressing the facts, when knowing the DNA, test will prove a [**BRADY** violation] which would constitute a miscarriage of justice, by allowing this conviction to stand on false and misleading evidence, in adding a clear violation of [**GIGLIO**].
>
> This Superior Court, recognized **Giglio v. United States**, 405 U.S. 150 (1972), and in a way which undermines the truth-telling process. And **United States v.** [**Bagley**], 473 U.S. 667 (1985): **Com v. Burk**, 781 A.2d 1136 (Pa. 2001). The Pa.R.C.P. 573 states that the Prosecutor's duty to disclose favorable evidence before trial. Whether or not the appellant request's [*sic*] it. **See United States v. Agurs**, 427 U.S. 97, 107 [(1976)]; **Bagley**, 437 U.S. at 676. The PCRA Court, didn't consider any of these facts when denying Post-Conviction Relief.

Appellant's Brief at I-4.

Appellant cites **Giglio**, in which the United States Supreme Court extended **Brady** to certain impeachment evidence, holding that "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule [of required **Brady** disclosure]." **See Commonwealth v. Harris**, 817 A.2d 1033, 1049 (Pa. 2002) (citation omitted).

- 13 -

The Pennsylvania Supreme Court has explained:

To succeed on a *Brady* claim, the defendant must show: (1) evidence was suppressed by the prosecution; (2) the evidence, whether exculpatory or impeaching, was favorable to the defendant; and (3) prejudice resulted. A *Brady* violation exists only where the suppressed evidence is material to guilt or punishment, *i.e.*, where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. In determining whether a reasonable probability of a different outcome has been demonstrated, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is shown when the government's suppression of evidence undermines confidence in the outcome of the trial.

*Commonwealth v. Cousar*, 154 A.3d 287, 301 (Pa. 2017) (citations omitted).

Here, the uncontradicted testimony of Ms. Bitner was: (1) the ME's Lab does not test for sickle cell disease; (2) it does not have the capability to test for sickle cell disease; and (3) DNA tests were conducted on semen and semen cannot be tested for sickle cell disease. N.T., 6/29/20, at 18-24. Consequently, to the evidence does not support Appellant's claim that the Commonwealth committed a *Brady*/*Giglio* violation.

In sum, the record confirms the PCRA court's determination that Appellant is not entitled to relief. Accordingly, we affirm the order denying Appellant's fourth PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  02/09/2022